IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 15, 2003

## STATE OF TENNESSEE v. GEORGE MEARS

**Direct Appeal from the Circuit Court for Cannon County**
**No. F98-03     J.S. Daniel, Judge**

---

**No. M2000-01663-CCA-R3-CD - Filed April 29, 2003**

---

Following a jury trial, Defendant, George Mears, was found guilty of theft of property of not less than $1,000 nor more than $10,000, a Class D felony. In his motion for a new trial, Defendant raised one issue, alleging that he received ineffective assistance of counsel at trial. Defendant contended that his counsel failed to adequately investigate and develop all available defense strategies and failed to adequately prepare for trial. Following an evidentiary hearing, the trial court denied Defendant's motion for a new trial. The trial court concluded that Defendant's counsel should have interviewed two witnesses prior to the day of trial but that Defendant failed to show that he was prejudiced by counsel's delayed interviews. As to all other claims of ineffective assistance of counsel, the trial court found that Defendant failed to show that his counsel's performance was deficient. After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which DAVID H. WELLES and ROBERT W. WEDEMEYER, JJ., joined.

David W. Piper, Woodbury, Tennessee (on appeal), and Larry B. Stanley, Jr., McMinnville, Tennessee (at trial) for the appellant, George Mears.

Paul G. Summers, Attorney General and Reporter; David H. Findley, Assistant Attorney General; William C. Whitesell, Jr., District Attorney General; and David L. Puckett, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

### 1. Evidence at Trial

On Saturday morning, October 25, 1997, Kenneth Tramel went out to work in his garden and noticed that his tractor was missing. The tractor's tire marks were visible, and Mr. Tramel followed the tracks down the hill from his garden to Short Mountain Highway. The tracks turned right on the

highway in the direction of Pea Ridge Road. Mr. Tramel reported the theft to the Cannon County Sheriff's Department.

Two weeks later, Defendant and his wife, Amy Mears, were attending a funeral in McMinnville, Tennessee. Around seven o'clock p.m., Mrs. Mears received a telephone call from her daughter, Eve Grizzle, informing her that either her house or her barn was on fire. Defendant and Mrs. Mears hurried home to find the barn entirely engulfed in flames. As the firemen pulled the burning hay from the barn with a pipe pole, a tractor came into view. Fay Morris, the fire and arson investigator for Cannon County, determined that the tractor matched the description of Mr. Tramel's stolen tractor, and she asked Mr. Tramel to come out to Defendant's place to identify the tractor.

Mr. Tramel testified that the tractor in Defendant's barn was his. When he examined the tractor, still partially covered with charred hay, Mr. Tramel discovered his tool box beneath the tractor's seat. The muffler he had recently purchased for the tractor was in the back of a pick-up truck also parked in the barn. Mr. Tramel testified that Defendant walked over to him and said, "Mr. Tramel, I'm sorry. I didn't know that was your tractor in the barn."

Ms. Morris was already at the barn when Defendant drove up. Together, they walked toward the barn, and Ms. Morris asked if there was a tractor in the barn. Defendant said there was but the tractor did not belong to him. At first, Ms. Morris could only see the burning bales of hay which were stacked four or five bales high. As the hay burned down, however, a tractor was revealed behind the stacks. Ms. Morris walked around the perimeter of the barn searching for tire marks or openings in the fence but did not discover any evidence that might establish how the tractor got in the barn. The gate next to the barn was padlocked, and Defendant told her he had the key. Ms. Morris, too, heard Defendant tell Mr. Tramel that he did not know the tractor belonged to him.

Officer Barry Knox with the Cannon County Sheriff's Department also examined the fence around the barn and found that none of the insulators or wires on the electric fence were disturbed. Ms. Morris joined Officer Knox in this second inspection of the property and discovered that the gate was then unlocked. Defendant was not with them on this inspection tour. Both Ms. Morris and Officer Knox noticed the silhouette of two men walking below the barn smoking a cigarette.

Defendant approached Ms. Morris and Officer Knox as they sat in Officer Knox's patrol car and told them he had found out how the tractor got into the barn. Defendant led them to the fence on the lower side of the barn. The insulators on the fence were laying on the ground, and the fence, although still hanging on the post, was loose. Defendant stepped on the fence to illustrate how the tractor might have fit through the opening. Both Ms. Morris and Officer Knox testified that the fence was in proper condition on their inspection a short time prior to this discovery.

Defendant called several witnesses to testify on his behalf. Joe Cuccia, a state arson investigator, testified that he received calls from Mrs. Mears, Ms. Morris and the Cannon County Sheriff's Department about the fire on Defendant's property. However, when Mr. Cuccia arrived on

the scene, the barn was already in the process of being cleaned up, and he could not perform an investigation. Mr. Cuccia said that he did not know what caused the fire.

Willie Jacobs had driven out to Defendant's place around one o'clock p.m. on the day the barn burned. Mr. Jacobs broke horses for a living, and Defendant had asked him to look at his Mustang horse. When Mr. Jacobs asked Defendant if he could sell him some hay, Defendant told him he had plenty and showed him the hay stored in the barn. Mr. Jacobs did not see a tractor. Defendant and Mr. Jacobs also discussed Defendant's attendance at the funeral that night.

Bobby Johnson, Defendant's neighbor, testified that he noticed Defendant's barn burning around seven o'clock p.m. The barn was approximately two hundred feet from Mr. Johnson's house. Mr. Johnson also saw a truck go up the road in front of Defendant's house as the barn burned. Although he did not know who owned the truck, Mr. Johnson knew the vehicle was not the Defendant's. On cross-examination, Mr. Johnson said that the truck did not have a trailer attached to it.

Defendant testified that he and Mrs. Mears were at a funeral when the fire started around seven o'clock p.m. Defendant denied that he stole Mr. Tramel's tractor although he had heard of the theft earlier in the week. Defendant had no idea how the tractor got in his barn or how the fire was started because the barn was not wired for electricity. Defendant said that he did not own a tractor. The morning after the fire, Defendant found tire marks on the road leading to the barn. The fence in that area had been cut, and the wire was pushed back six or eight feet. At Defendant's request, Deputy James Abbott with the Cannon County Sheriff's Department examined the fence and tire marks.

Defendant said that he recognized the burned tractor as Mr. Tramel's because he had previously seen the tractor on Mr. Tramel's property. However, Defendant denied that he told Ms. Morris that the tractor was not his or that he apologized to Mr. Tramel when Mr. Tramel arrived at the barn.

On the basis of this evidence, the jury found Defendant guilty of theft of property.

## 2. Hearing on Defendant's Motion for New Trial

In his motion for a new trial, Defendant alleged that he was denied a fair trial because of the ineffective assistance of his counsel in the preparation and investigation of the case including the development of all available defenses. Specifically, Defendant contended that his counsel failed to (1) interview Willie Jacobs and Brent Williams until the day of trial; (2) call Amy Mears as a witness to verify Defendant's alibi on the night of the fire and provide information about potential suspects in the theft of Mr. Tramel's tractor and the instigation of the fire; (3) call his stepdaughter, Eve Grizzle, as a witness to testify that the tractor was not in the barn on the afternoon of the fire; and (4) call Lillian Taylor to verify that Defendant was not at the barn when the fire started and provide information as to additional suspects.

At the hearing, Amy Mears testified that she and Defendant were separated at the time of the trial and she was staying in Texas for health reasons. Although Mrs. Mears informed Defendant's counsel that she had information, she was not called as a witness. Mrs. Mears said that she saw Floyd Young, also known as Carl Allen Young, and Ben Taylor, walking up Pea Ridge Road in brown coveralls the night of the fire. Mrs. Mears said that Carl Allen's father, Jeff Young, "hated" Defendant, and Mr. Young's girlfriend, Marilyn, was also near the house on the night of the fire. After the fire, Mrs. Mears said that she found a cigarette lighter by the barn, but counsel told her the lighter was not relevant. The day after the fire, Mrs. Mears and Mrs. Taylor followed the tire tracks discovered by Defendant back into the woods and found a spot where the tractor may have been parked before it was placed in the barn. Mrs. Mears discovered a gummie bear candy wrapper and a Budweiser light beer can near the site, and Carl Allen Young was known to eat that type of candy and drink Budweiser beer.

After the fire, Mrs. Mears and Defendant recorded several telephone conversations with various people including Lillian Taylor and Deputy Abbott, and Mrs. Mears gave the tapes to Defendant's counsel. Mrs. Mears also said that several people had been to see them the day of the fire. Her daughter, Eve Grizzle, wanted to borrow a kerosene heater that was stored in the barn, and Mrs. Grizzle said the tractor was not in the barn when she retrieved the heater. Brent Williams had stopped by as well as her son-in-law, Larry Grizzle. None of these people were called as witnesses. Mrs. Mears said that the reason Defendant's counsel did not want to call Mrs. Taylor to the stand was because she was crazy, but Mrs. Mears denied that Mrs. Taylor was mentally unbalanced. On cross-examination, Mrs. Mears admitted that she did not know that Mrs. Taylor had given a statement to the police in which Mrs. Taylor said she did not see or hear anything on the day of the fire.

Defendant testified that his counsel called him about once a month. Defendant told his counsel that Mrs. Taylor told Defendant that Ben Taylor and Carl Allen Young stole the tractor because she saw them driving the tractor on the day it disappeared. Mrs. Taylor also said that she saw the two boys come out of the barn on the night of the fire. However, Defendant's counsel said that Mrs. Taylor would hurt Defendant's case if she testified, and he did not want to call Mrs. Taylor as a witness. Defendant's counsel did not seem interested in the feud between Jeff Young and Defendant. Defendant called Willie Jacobs periodically to see if his counsel had talked to him, and Mr. Jacobs always said that he had not heard from Defendant's counsel. Counsel told Defendant that Brent Williams' testimony would not be helpful, and Robert Bogle could only testify that he saw two boys walking down the road on the night of the fire. As far as Defendant knew, his counsel had not interviewed either Ben Taylor or Carl Allen Young. Larry Grizzle had been subpoenaed, but he was not at the trial. Defendant said he did not ask his counsel to use Eve Grizzle as a witness at trial.

Eve Grizzle testified that she visited Defendant's house on the afternoon of the fire between one o'clock p.m. and four or five o'clock p.m. although she did not say exactly when she had been in the barn. Mrs. Grizzle said she went into the barn to retrieve a kerosene heater and did not notice a tractor. Mrs. Grizzle told Defendant's counsel that she would be willing to testify, but she was not called as a witness.

Defendant's counsel testified that he had several meetings with Defendant and his family members over the course of the trial's preparation. After he was retained, counsel met with the district attorney and the sheriff's department to review their files. Based upon this review, counsel determined that the only available defense rested on proving that someone else had put the tractor in the barn. He and Defendant discussed several witnesses who might be able to testify that the tractor was not in the barn that afternoon. Defendant only mentioned Brent Williams and Willie Jacobs, and Brent Williams said that he did not notice whether or not the tractor was in the barn that day.

Counsel testified that he interviewed Mrs. Taylor by telephone, but Mrs. Taylor said that she had not seen anyone at the barn. When he told Defendant and Mrs. Mears that Mrs. Taylor could not testify as they wished, Mrs. Mears told him that Mrs. Taylor had been in a mental institution. At Defendant's request, counsel subpoenaed Mrs. Taylor anyway. Despite numerous conversations with the family, no one mentioned that Mrs. Grizzle could testify that she had not seen the tractor on the afternoon of the fire. Had he known, counsel said that he would have called her as a witness.

During trial preparation, counsel said that both Brent Williams and Willie Jacobs could not be located. Defendant kept assuring him he could find the men so counsel did not hire an investigator. Eventually the witnesses were contacted just prior to the trial. Neither Defendant nor counsel thought it was necessary to subpoena Mrs. Mears who was living in Texas at the time of the trial. No one contested the fact that Defendant was at a funeral when the fire started, and Mrs. Mears had no personal knowledge of how the fire started or who stole the tractor. Counsel did not remember Mrs. Mears mentioning the discovery of a cigarette lighter, but he did discuss the tire tracks with her. Counsel reviewed the taped conversation between Defendant and Deputy Abbott as they examined the tracks and cut wire, but the tape consisted mostly of Defendant talking and Deputy Abbot walking around. In counsel's view, Defendant was in the best position to testify about the tire tracks he discovered.

At the conclusion of the hearing, the trial court concluded that counsel was deficient for not interviewing witnesses Willie Jacobs and Brent Williams concerning their potential testimony prior to trial. However, the trial court found that Defendant had not shown he was prejudiced by this deficiency. In regard to counsel's failure to call Mrs. Grizzle as a witness or interview her prior to trial, the trial court accredited the testimony of counsel that none of the family members, including Defendant, had informed him that Mrs. Grizzle could testify that the tractor was not in the barn on the afternoon of the fire. Finally, on all other claims, the trial court found that Defendant had failed to establish that his counsel's performance was ineffective and denied Defendant's motion for a new trial.

### 3. Standard of Review

We note at the outset that claims concerning the ineffective assistance of counsel at trial are best raised in a post-conviction proceeding rather than on direct appeal in order to provide the defendant with the opportunity to present his issues in an evidentiary hearing. *State v. Honeycutt,*

54 S.W.3d 762, 766 (Tenn. 2001); *Thompson v. State*, 958 S.W.2d 156 (Tenn. Crim. App. 1997). However, in this instance, Defendant had ample opportunity to present his issues and witnesses to the trial court.

We review the effectiveness of counsel under the standards enunciated in *Strickland v. Washington*, 466 U.S. 668, 693, 104 S.Ct. 2052, 80 L. Ed. 2d 674 (1974) and *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). The Sixth Amendment to the United States Constitution and Article I, § 9 of the Tennessee Constitution guarantee an accused the right to representation by counsel. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). In assessing counsel's effectiveness, we look to see first whether counsel's performance at trial was "within the range of competence demanded of attorneys in criminal cases," and, secondly, whether the defendant was adversely affected by counsel's alleged deficient performance. *Baxter*, 523 S.W.2d at 936; *Strickland*, 466 U.S. at 693, 104 S.Ct. 2052 at 2064. In order to establish prejudice, the petitioner must show that there is a reasonable probability that the outcome of the proceedings would have been different but for the ineffective assistance of counsel. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*; *see also Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997), *cert. denied* 525 U.S. 830, 142 L. Ed. 2d 64, 119 S. Ct. 82 (1998); *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996).

Because the trial court determined that Defendant's counsel was deficient for not interviewing two of the witnesses until the day of trial, Defendant argues initially that the burden of proving that he was not prejudiced by counsel's performance should shift to the State. However, both the *Strickland* court and our courts have held that a defendant must satisfy both prongs of the *Strickland* test before he or she may prevail on a claim of ineffective assistance of counsel. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Henley*, 960 S.W.2d at 579; *Goad*, 938 S.W.2d at 370. In addressing the two components of a claim of ineffective assistance, the *Strickland* court observed that "[u]nless a defendant makes both showings [of deficiency and prejudice], it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068. Because the petitioner must establish both deficient conduct and prejudice, relief will be denied if the petitioner fails to prove either component. *Goad*, 938 S.W.2d at 370.

The trial court's findings of fact underlying a claim of ineffective assistance of counsel are reviewed de novo with a presumption that the findings are correct unless the preponderance of the evidence establishes otherwise. *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Therefore, this Court may not re-weigh or re-evaluate these findings nor substitute our inferences for that of the trial judge unless the evidence in the record preponderates against those findings. *Honeycutt*, 54 S.W.3d at 763. Questions concerning the credibility of witnesses and the weight and value given their testimony is resolved by the trial court, not this Court. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). However, the application of the law to the court's factual findings, such as whether counsel's conduct was deficient or whether the petitioner was prejudiced, is reviewed de novo with no presumption of correctness. *Id.*

In reviewing counsel's performance, the distortions of hindsight must be avoided, and this Court will not second-guess counsel's decisions regarding trial strategies and tactics. *Hellard v. State*, 629 S.W.2d 4, 9 (Tenn. 1982). A particular act or omission by counsel will not be considered unreasonable simply because the strategy was unsuccessful. *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. Rather, counsel's alleged errors should be judged from the point of time from which they were made in light of all the facts and circumstances at that time, and from the perspective of counsel. *Id.*, 466 U.S. at 690, 104 S. Ct. at 2066.

## 4. Ineffective Assistance of Counsel

Defendant alleges that his counsel failed to adequately investigate the case or present alternative defenses, and his argument is reflected primarily by counsel's failure to call certain witnesses to testify at trial. Defendant must produce those witnesses at the evidentiary hearing in order to establish that "(a) a material witness existed and the witness could have been discovered but for counsel's neglect in his investigation of the case, (b) a known witness was not interviewed, (c) the failure to discover or interview a witness inured to his prejudice, or (d) the failure to have a known witness present or call the witness to the stand resulted in the denial of critical evidence which inured to the prejudice of the [defendant]." *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990). Mere speculation as to what the witness would have said if called is not sufficient. *Id.* Unless the defendant produces a material witness who could have been found by reasonable investigation and would have testified favorably on the defendant's behalf, the defendant has failed to establish prejudice. *Id.* at 758.

Defendant argues that his wife, Amy Mears, would have been able to provide an alibi for Defendant at the time the fire started. However, as pointed out by Defendant's counsel, neither the origin of the fire nor Defendant's whereabouts when the fire started was at issue. Defendant was arrested for theft of property, not arson, and Mrs. Mears did not know anything about the stolen tractor. Mrs. Mears did corroborate Defendant's testimony that he discovered a broken fence and tire tracks after the fire. Counsel responded that he felt Defendant was in the best position to testify and Defendant did testify about these discoveries. Mrs. Mears' testimony concerning these issues was merely cumulative.

Mrs. Mears said that she and Defendant made several tape recordings of conversations with various people after the fire which she gave to Defendant's counsel. Counsel talked with everyone on Mrs. Mears's list but found, for example, that the tape of Defendant's conversation with Deputy Abbott provided little useful information. Mrs. Mears said that counsel did not think her discovery of a cigarette lighter behind the barn of any significance while counsel said he did not remember Mrs. Mears telling him that she found such an item.

According to Mrs. Mears, she saw Carl Allen Young and Ben Taylor on the road near the barn as she and Defendant drove home in response to Mrs. Grizzle's call about the fire although Defendant does not mention seeing the boys in his testimony. Carl Allen's father, Jeff Young, and the Defendant had a long history of animosities. Moreover, Mrs. Mears' discovery of a candy

wrapper and Budweiser light beer can near the spot where she said the tractor was hidden indicated that Carl Allen was involved in the theft of the tractor. Counsel discussed these potential suspects with Defendant and concluded that the boys' testimony would not be helpful to Defendant. It was felt that they would simply deny being anywhere near the fire, and no one else could corroborate Mrs. Mears' theory.

Counsel testified that Mrs. Mears was separated from Defendant and living in Texas at the time of the trial, and he and Defendant had discussed whether she should return to Tennessee to testify. Counsel and Defendant both decided it was not necessary to subpoena Mrs. Mears. No one contested Defendant's alibi for the fire, and Mrs. Mears did not have personal knowledge of the fire or theft.

The evidence in the record does not preponderate against the trial court's finding that Defendant's counsel was not deficient for deciding not to call Mrs. Mears to testify at Defendant's trial. Defendant is not entitled to relief on this issue.

Eve Grizzle testified that she told Defendant's counsel that she was in Defendant's barn on the afternoon of the fire and did not see the tractor. Counsel testified that he talked with Defendant and various family members on numerous occasions, and no one mentioned that Mrs. Grizzle had been on the farm that day. At the conclusion of the hearing, the trial court accredited counsel's testimony and discredited Mrs. Grizzle's. The evidence in the record does not preponderate against this finding, and Defendant is not entitled to relief on this issue.

Both Mrs. Mears and Defendant testified that Lillian Taylor told them that she saw Carl Allen Young and Ben Taylor driving Mr. Tramel's tractor on the day it was stolen and also saw the boys at the barn on the night it burned. On cross-examination, however, Mrs. Mears admitted that she did not know that Mrs. Taylor had told the police investigating the fire that she had not seen or heard anything that night. Mrs. Taylor also told Defendant's counsel in a telephone interview that she did not know anything about the theft or the fire. Based on these statements, counsel decided that Mrs. Taylor could provide no useful information at trial. More important, Mrs. Taylor did not testify at the hearing, and we will not speculate as to what Mrs. Taylor might have said or whether her testimony would have been favorable to Defendant. *See Black v. State*, 794 S.W.2d 752 (Tenn. Crim. App. 1990). Defendant has failed to meet his burden of proof and is not entitled to relief on this issue.

Defendant told his counsel that both Mr. Williams and Mr. Jacobs could testify that the tractor was not in the barn in the hours immediately preceding the fire. Defendant testified that he checked with Willie Jacobs periodically to see if his counsel had contacted him, and Mr. Jacobs always said that he had not heard from Defendant's counsel. Defendant's counsel, on the other hand, said that Mr. Jacobs and Mr. Williams had moved from Cannon County before the trial. Because Defendant assured him that he could find the two witnesses, counsel did not hire an investigator. Mr. Williams and Mr. Jacobs were not located until immediately prior to trial so counsel did not have the opportunity to discuss their potential testimony until the day of trial. At that time, counsel

determined that Mr. Williams could not verify that the tractor was not in the barn on the afternoon of the fire, and he decided not to call him as a witness. The trial court concluded that counsel's performance was deficient in not interviewing these witnesses prior to trial, but that Defendant had failed to show he was prejudiced. The record does not indicate that Mr. Williams could have provided any exculpatory testimony. The evidence in the record does not preponderate against the trial court's finding of any prejudice to Defendant.

Finally, Defendant alleges that his counsel failed to pursue all available defenses although Defendant does not suggest what these defenses might be. Even though Defendant repeatedly denied he was at home when the fire started, for example, he did not offer any explanation of where he was the day the tractor was stolen. Instead, Defendant's attention appeared to be focused solely on the fire. The evidence in the record does not compel one to conclude that the person who started the fire was the person who stole the tractor as Defendant might suggest. In fact, there is no evidence to rule out the possibility that the fire was started by natural causes. Based on the information available, counsel's decision as a matter of trial strategy to prove that the tractor was not on Defendant's property prior to the fire is reasonable. The jury, however, obviously accredited Ms. Morris' and Officer Knox's testimony that there were no tractor tire marks or broken fences surrounding the burning barn, and Ms. Morris' statement that Defendant knew there was a tractor in the barn that did not belong to him. The failure of a particular trial strategy does not necessarily indicate that the strategy was ill-advised. The evidence in the record does not preponderate against the trial court's finding that counsel was not deficient in his choice of defenses. Defendant is not entitled to relief on this issue.

## CONCLUSION

After a careful review of the record, we affirm the judgment of the trial court.

_____
THOMAS T. WOODALL, JUDGE

-9-